Michael C. LIDDELL, a minor, by Minnie LIDDELL, his mother and next friend; Kendra Liddell, a minor, by Minnie Liddell, her mother and next friend; Minnie Liddell; Roderick D. LeGrand, a minor, by Lois LeGrand, his mother and next friend; Lois LeGrand; Clodis Yarber, a minor, by Samuel Yarber, his father and next friend; Samuel Yarber; Earline Caldwell; Lillie Caldwell; Gwendolyn Daniels; National Association for the Advancement of Colored People; United States of America; City of St. Louis, Plaintiffs,

v.

BOARD OF EDUCATION OF THE CITY OF ST. LOUIS; John P. Mahoney, President, Board of Education of the City of St. Louis; Penelope Alcott, a member of the Board of Education; Marjorie R. Smith, a member of the Board of Education; Earl E. Nance, Jr., a member of the Board of Education; Thomas F. Bugel, a member of the Board of Education; Louis P. Fister, a member of the Board of Education; Nancy L. Hagan, a member of the Board of Education; Earl P. Holt, III, a member of the Board of Education; Shirley M. Kiel, a member of the Board of Education; Gwendolyn A. Moore, a member of the Board of Education; Dr. Joyce M. Thomas, a member of the Board of Education; Rufus Young, Jr.; Julius C. Dix; David J. Mahan, Interim Superintendent of Schools, Appellants,

Ronald Leggett, St. Louis Collector of Revenue, Defendant,

State of Missouri; John Ashcroft, Governor of the State of Missouri; William Webster, Attorney General; Wendell Bailey, Treasurer; James Moody, Commissioner of Administration; Robert E. Bartman, Commissioner of Education; Missouri State Board of Education; Roseann Bentley, Member of the Missouri State Board of Education; Raymond McCallister, Jr., member of the Missouri State Board of Education; Susan D. Finke, member of the Missouri State Board of Education; Thomas R. Davis, member of the Missouri State Board of Education; Gary D. Cunningham, member of the Missouri State Board of Education; Rebecca M. Cook, member of the Missouri State Board of Education; Sharon M. Williams, member of the Missouri State Board of Education, Appellees.

Special School District of St. Louis County; Affton Board of Education; Bayless Board of Education; Brentwood Board of Education; Clayton Board of Education; Ferguson–Florissant Board of Education; Hancock Place Board of Education; Hazelwood Board of Education; Jennings Board of Education; Kirkwood Board of Education; Ladue Board of Education; Lindbergh Board of Education; Maplewood–Richmond Heights Board of Education; Mehlville Board of Education; Normandy Board of Education; Parkway Board of Education; Pattonville Board of Education; Ritenour Board of Education; Riverview Gardens Board of Education; Rockwood Board of Education; University City Board of Education; Valley Park Board of Education; Webster Groves Board of Education; Wellston Board of Education; St. Louis County; Buzz Westfall, County Executive; James Baker, Director of Administration, St. Louis County, Missouri; Robert H. Peterson, Collector of St. Louis County "Contract Account," St. Louis County, Missouri, Defendants,

St. Louis Teachers' Union, Local 420, AFT, AFL–CIO. Intervenor.

Michael C. LIDDELL, a minor, by Minnie LIDDELL, his mother and next friend; Kendra Liddell, a minor, by Minnie Liddell, her mother and next friend; Minnie Liddell; Roderick D. LeGrand, a minor, by Lois LeGrand, his mother and next friend; Lois LeGrand; Clodis Yarber, a minor, by Samuel Yarber, his father and next friend; Samuel Yarber, Appellees,

Earline Caldwell; Lillie Caldwell; Gwendolyn Daniels; National Association for the Advancement of Colored People, Amici Curiae,

United States of America; City of St. Louis, Appellees,

v.

BOARD OF EDUCATION OF the CITY OF ST. LOUIS; John P. Mahoney, President, Board of Education of the City of St. Louis; Penelope Alcott, a member of the Board of Education; Marjorie R. Smith, a member of the Board of Education; Earl E. Nance, Jr., a member of the Board of Education; Thomas F. Bugel, a member of the Board of Education; Louis P. Fister, a member of the Board of Education; Nancy L. Hagan, a member of the Board of Education; Earl P. Holt, III, a member of the Board of Education; Shirley M. Kiel, a member of the Board

846

of Education; Gwendolyn A. Moore, a member of the Board of Education; Dr. Joyce M. Thomas, a member of the Board of Education; Rufus Young, Jr.; Julius C. Dix; David J. Mahan, Interim Superintendent of Schools, Appellants,

Ronald Leggett, St. Louis Collector of Revenue, Defendant,

State of Missouri; John Ashcroft, Governor of the State of Missouri; William Webster, Attorney General; Wendell Bailey, Treasurer; James Moody, Commissioner of Administration; Robert E. Bartman, Commissioner of Education; Missouri State Board of Education; Roseann Bentley, member of the Missouri State Board of Education; Raymond McCallister, Jr., member of the Missouri State Board of Education; Susan D. Finke, member of the Missouri State Board of Education; Thomas R. Davis, member of the Missouri State Board of Education; Gary D. Cunningham, member of the Missouri State Board of Education; Rebecca M. Cook, member of the Missouri State Board of Education; Sharon M. Williams, member of the Missouri State Board of Education; Special School District of St. Louis County; Affton Board of Education; Bayless Board of Education; Brentwood Board of Education; Clayton Board of Education; Ferguson–Florissant Board of Education; Hancock Place Board of Education; Hazelwood Board of Education; Jennings Board of Education; Kirkwood Board of Education; Ladue Board of Education; Lindbergh Board of Education; Maplewood–Richmond Heights Board of Education; Mehlville Board of Education; Normandy Board of Education; Parkway Board of Education; Patton-

ville Board of Education; Ritenour Board of Education; Riverview Gardens Board of Education, Appellees,

Rockwood Board of Education, Defendant,

University City Board of Education; Valley Park Board of Education; Webster Groves Board of Education, Appellees,

Wellston Board of Education; Defendant,

St. Louis County, Appellee,

Buzz Westfall, County Executive; James Baker, Director of Administration, St. Louis County, Missouri; Robert H. Peterson, Collector of St. Louis County "Contract Account," St. Louis County, Missouri, Defendants,

St. Louis Teachers' Union, Local 420, AFT, AFL–CIO. Amicus Curiae.

Nos. 91–3557, 91–3559 and 92–2763.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1993.

Decided March 17, 1993.

Kenneth C. Brostron, St. Louis, MO, argued (Stephen A. Cooper, Joan M. Swartz and Steven J. McMahon, on the brief), for appellants Bd. of Educ. of City of St. Louis, et al.

Louis Gilden, St. Louis, MO, argued (Charles R. Oldham, on the brief), for intervenor St. Louis Teachers' Union.

Michael A. Middleton, Columbia, MO, argued (William L. Taylor, Washington, DC, on the brief), for amici curiae Earline Caldwell, et al.

Michael J. Fields, Asst. Atty. Gen., St. Louis, MO, argued (Bart A. Matanic and John J. Lynch, Asst. Attys. Gen., on the brief), for appellees State of MO, et al.

Before MCMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HEANEY, Senior Circuit Judge.

In 1984 this court, sitting en banc, set forth a comprehensive program to integrate the St. Louis public schools. *See Liddell v. State of Missouri*, 731 F.2d 1294 (8th Cir.) (en banc) (*"Liddell VII"*), *cert. denied*, 469 U.S. 816, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984). Since that date, numerous appeals have been filed with this court. We now have an appeal before us by the Board of Education of the City of St. Louis.[1] The thrust of the Board's appeal is that the district court erred (1) by not requiring the State of Missouri to pay its proportionate share of those desegregation-related capital improvement costs which exceed previously budgeted items and (2) by entering an order accepting in substance the report of the Amicus Group without conducting an evidentiary hearing and without making adequate findings of fact.[2] The order has the effect of modifying racial balance goals, changing student assignments, and closing certain schools. The Board asks that we reverse the applicable district court orders[3] and remand to the district court with appropriate directions.

---

1. Neither the Caldwell/NAACP plaintiffs or the St. Louis Teachers Union joined in the appeal, though they did file briefs with this court regarding the appeal. The State has moved that we strike their briefs, but we choose instead to treat them as amici curiae.

2. The Amicus Group consists of the Amicus, Shulamith Simon; the directors of EMAC (Education Monitoring and Advisory Committee), VICC (Voluntary Interdistrict Coordinating Committee), and MCC (Metropolitan Coordinating Committee); and the Financial Advisors. The district court directed the Amicus Group and representatives of the Board, McCarthy-Fleming, the Department of Elementary and Secondary Education, and plaintiffs to jointly

develop a revised Capital Improvements Budget. The directive called for a review of the scope of the total Capital Improvements Project and the status of each building, actual enrollments, enrollment projections, and the necessary facilities.

3. Three orders of the district court have been appealed, those labelled by the district court, and identified by the parties, as L(3538)91, L(3542)91, and G(470)92. In L(3538)91, reported at *Liddell v. Board of Education*, 771 F.Supp. 1503 (E.D.Mo.1991), the district court accepted the Amicus Group's initial report and adopted the recommendations therein. L(3542)91 addressed school construction costs (specifically the Ames and Madison schools). *Liddell v.*

## SCHOOL CONSTRUCTION COSTS

■ The district court has refused to hold the State responsible for a share of the construction costs beyond those mandated by the district-wide capital improvements plan, in accordance with this court's decision in *Liddell v. Board of Education*, 907 F.2d 823 (8th Cir.1990) (*"Liddell XIX"*). In that case the court stated in plain and simple language:

The district-wide capital improvements plan was thoroughly litigated, and neither the State nor the Board appealed the district court's implementation order. Indeed, as the State aptly points out, "both parties accepted the [d]istrict [c]ourt's determination that payment of the amount there ordered would completely satisfy the State's obligation for renovations[s] ... addressed by the [c]ourt in [the district-wide plan]."

*Id.* at 824. The court also addressed the question of magnet school improvements:

The Board has not presented any evidence to support its claim [that] the magnet plan budget is inadequate to place St. Louis's magnet schools on a par with the suburban districts. Thus, we are unable to conclude the district court has ordered the State to pay less than "its share of

the reasonable capital ... expenses of [the] magnet school[s]."

*Id.* at 825 (citation omitted).[4]

The St. Louis Board of Education conceded at oral argument that it has approximately $355 million available to complete the mandated school construction programs. It further concedes that this amount is sufficient to do the job. It nonetheless argues that because construction costs are greater than anticipated at the time the earlier orders were issued, that the State should be required to pay its share of the increased costs. We agree with the district court that there is no basis for altering the State's obligation with respect to construction costs for either magnet or nonmagnet schools, and therefore affirm its decision on this matter.

We feel obliged to note that the construction program both for magnet and nonmagnet schools is well behind schedule.[5] Every reasonable step must be taken by the Board of Education to complete the construction program at the earliest possible date.

## RACIAL BALANCE GOALS

■ The district court adopted the recommendations of the Amicus Group with respect to racial balance in the regular

*Board of Education*, No. 72–100C(5), 1991 WL 177702 (E.D.Mo. Sept. 4, 1991). In G(470)92, reported at *Liddell v. Board of Education*, 795 F.Supp. 930 (E.D.Mo.1992), the district court accepted the Amicus Group's second, superseding report and adopted recommendations therein.

**4.** The Board further argues that it should be reimbursed by the State for a share of the costs of renovating the Ames and Madison Schools. The district court found that "the State has paid into the Capital Projects Fund all of its matching payments for capital expenditures presented by the City Board, including those at Ames and Madison," and consequently denied the Board's motion. *Liddell v. Board of Education*, No. 72–100C(5), slip op. at 2, 1991 WL 177702 (E.D.Mo. Sept. 4, 1991) (L(3542)91). We find no evidence that the district court was clearly erroneous on this count, and therefore affirm its ruling.

The cost of asbestos abatement has been treated separately from the construction issue, and there is apparent agreement that the cost of this abatement will be shared by the State and the School District. *See Liddell v. Board of Edu-*

*cation*, 771 F.Supp. 1496 (E.D.Mo.1991). The cost of site improvement for magnet school construction has also been treated separately. *See Liddell XIX*, 907 F.2d at 825.

**5.** In earlier opinions of this court, we established a goal of 14,000 students in the magnet schools. This goal was to be met by 1989–90. In a later opinion, we extended the date of completion, directing the parties to "strive to achieve the goal at the earliest time possible." *Liddell XIX*, 907 F.2d at 825. At oral argument, the parties agreed that approximately 9,600 students were enrolled in the magnet schools at the present time. A few of the schools that have been constructed are not yet at capacity. Three proposed schools are not yet under construction (the Science Center Middle School, Gateway Middle School, and Gateway Elementary School), and two additional schools are not yet open (Soldan High School and Stix Early Childhood Center). The five schools that have not been opened have a combined additional capacity of approximately 2,700 (approximately 400 of Soldan High School's 900 anticipated students are temporarily at McKinley).

integrated schools. It did so without conducting an evidentiary hearing. After carefully reviewing the record, we do not believe that the district court abused its discretion in modifying the racial balance goal.

In *Adams v. United States*, 620 F.2d 1277 (8th Cir.1980) (en banc) (*"Liddell II "*), this court, in outlining the "Orfield approach" to desegregating the St. Louis public schools, indicated that black enrollment at the integrated schools would be maintained at 30–50%. *Id.* at 1296. In 1990, the Board, the State, and the district court approved the Comprehensive Student Assignment and Consolidation Plan (CSACP), which set the goal for integrated schools at 50% black to 50% white. No review of that plan was sought in this court. Because of changes in the enrollment projections, the Amicus Group recommended, first in August 1991 and again in May 1992, that the goal be changed to 55% black to 45% white. When this matter was presented to the district court, the Liddell plaintiffs recommended the addition of a five-percent variance. The district court adopted the recommendations of the Amicus Group with the variance suggested by the Liddell plaintiffs. *Liddell,* 795 F.Supp. at 932–33.

The Board argues that the district court should not have changed the goal from that in the CSACP, and alternatively, that the task of student assignment should be returned exclusively to the Board. Having studied the available data from the district court on racial balance in the integrated schools,[6] we conclude that the district court acted within its discretion in changing the goal to 55% black and 45% white. School

enrollment data indicates that the new goal is a realistic one, and the Board's failure to achieve the previous goal militates against removing federal court supervision from this process at this time.

Of necessity, we must give the district court a significant degree of discretion in this matter. Not only does the number of black students transferring from the City of St. Louis to the suburbs change from year to year, but as new magnet schools open, the enrollment at the traditional schools changes. In our view, what the district court has done here is well within the spirit of *Liddell II.*

### STUDENT ASSIGNMENTS AND SCHOOL CLOSINGS

■ The Amicus Group submitted a student assignment plan to the court.[7] The plan modified student assignment patterns, school closings, and school utilizations. The plan contemplates the closing of two high schools: Roosevelt and Vashon. The plan was approved by the district court without an evidentiary hearing. *See Liddell v. Board of Education,* 795 F.Supp. 930 (E.D.Mo.1992) (G(470)92).

The Board argues that these changes should not have been made without such hearing. It complains that the Amicus Group made a number of errors, each of which affects the ultimate student assignments to be made. According to the Board, the Amicus Group erred in establishing the building capacity of certain schools, it over-estimated the number of students who would enroll in the magnet schools, and it erred in stating that two of the remaining four high schools would not be needed by 1995–96 (Roosevelt and Va-

---

**6.** Records indicate that in the 1992 school year there was one integrated high school (Roosevelt, 64% black to 36% white), and six integrated middle schools with an overall racial balance of 49% black and 51% white; one school, Fanning, had a 50–50 ratio, while another, Webster, had a 75% black to 25% white ratio, and yet another, Blow, had a 66% white to 34% black ratio. There were 18 integrated elementary schools with an overall black-to-white ratio of 60–39. Seven schools have a ratio that exceeds 60% black to 40% white: Adams (82–18), Clay (84–16), Garfield (63–37), Hamilton (78–22), Henry (71–29), LaFayette (65–35), and Sigel (76–24).

In four schools, the white-to-black ratio exceeds 60–40: Buder (63–37), Meramec (67–33), Roe (67–33), and Woodward (73–27).

**7.** The Amicus Group initially filed a report, L(3525)91, in August 1991, which the district court adopted shortly thereafter. *Liddell,* 771 F.Supp. 1503 (L(3538)91). The Board objected that the report relied on faulty enrollment projections, which were then corrected. The Amicus Group filed a superseding report, that at issue in this appeal, in May 1992. G(348)92.

shon). The Board argues that closing Roosevelt will mean that the entire south side of St. Louis will be without a traditional high school, and that Vashon should not be closed because it is one of the oldest high schools in the nation serving African–Americans and plays an important role as a meeting place for the residents of North St. Louis. The Board finally states that it is prepared to proceed with an evidentiary hearing promptly and the hearing would not exceed three or four days in length.

We agree with the Board that the issues outlined above are of sufficient importance that the Board should be given an opportunity to present its position to the court before a final decision on student assignments is made. The Board should be given an opportunity to refute the facts asserted by the Amicus Group in its report. The amici on this appeal, the Caldwell/NAACP plaintiffs and the Teachers' Union, should be given a similar opportunity, as should the State of Missouri because the ultimate decision on student assignments may affect the State's funding obligations.

It would, of course, be in the best interest of all if the parties could sit down with the Amicus Group and resolve as many of the outstanding issues as possible, thus obviating the need for a hearing. Failing to reach agreement, an evidentiary hearing will have to be held.

It has been suggested by the Board of Education that it should be permitted to cross-examine the members of the Amicus Group who participated in preparing the report. If the district court believes that their testimony is relevant to the issues which remain to be resolved, then either party may call members of the Amicus Group to testify. It should constantly be kept in mind, however, that this court has continuously encouraged the district court to appoint committees to assist the court in resolving the problems that arise in de-segregating this large school district. *See Liddell VII*, 731 F.2d at 1323. That fact should be kept in mind by the district court in determining the extent to which such examination is appropriate.

We remand this matter to the district court for action consistent with this opinion and urge all of the parties to cooperate fully and promptly so that all issues will be resolved before the school children of St. Louis return to their schools in September 1993.